UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
C.D., C.D. on behalf of S.D., R.F.,         :       05 Civ. 7945 (SHS)
and R.F. on behalf of S.C.,              :
                                    :
                Plaintiffs,    :
                                    :       <u>OPINION & ORDER</u>
          -against-         :
                                    :
NEW YORK CITY DEPARTMENT        :
OF EDUCATION, NEW YORK CITY     :
BOARD OF EDUCATION, AND JOEL KLEIN,  :
In his official capacity as Chancellor of the  :
New York City School District,       :
                                    :
                Defendants.   :
-----------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

      C.D., C.D. on behalf of her minor child S.D., R.F., and R.F. on behalf of her minor

child S.C. (collectively "plaintiffs") bring this action against the New York City Department of

Education ("DOE"), the New York City Board of Education ("BOE"), and Chancellor Joel Klein

in his official capacity only (collectively, "defendants"). Plaintiffs S.D. and S.C. (the "minor

plaintiffs" or the "minors") are students who have been classified as having learning disabilities

by defendants. S.D. and S.C. enrolled in non-public schools at defendants' expense because

defendants acknowledged that they could not provide the minors with a free appropriate

education in defendants' public schools because of the minors' learning disabilities. Prior to

attending non-public schools, the minors attended defendants' public schools. While in

attendance in public schools, they each had received free breakfast and lunch based on their

families' income levels. Once they began attending private schools, their tuition and

transportation was paid for by defendants, but the minors were no longer provided with free

breakfast or lunch, and they were not reimbursed for those meals by defendants. Plaintiffs

unsuccessfully appealed the administrative rulings that meals would not be provided to the minors and then commenced this action.

Plaintiffs allege that if not for the minors' learning disabilities, they could have continued to attend the New York City public schools where they had received free meals. Instead, they had no alternative but to attend non-public schools where they did not receive free meals. Plaintiffs therefore assert claims for violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1415 et seq., and 42 U.S.C. § 1983.

## I.    PROCEDURAL POSTURE

Defendants move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), which is subject to the same standard of review as a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Desiano v. Warner-Lambert & Co., 467 F.3d 85, 89 (2d Cir. 2006). In deciding such a motion, a Court must confine itself to the allegations contained in the complaint, any written instrument attached to the complaint as an exhibit or incorporated in it by reference, and any documents the plaintiff either "possessed or knew about and upon which [it] relied in bringing the suit." Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) (citation omitted). Courts may consider documents incorporated in the pleadings by reference without thereby converting a motion for judgment on the pleadings into a motion for summary judgment. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). In deciding defendants' Rule 12(c) motion the Court will consider only those documents incorporated in the complaint by reference or otherwise appropriately considered in deciding such a motion.

For the reasons that follow, defendants' motion to dismiss is granted in part and denied in

part.

## II.    BACKGROUND

The following facts are as alleged in the Second Amended Complaint.

Defendants provide free lunch to students from low income families and others pursuant to the standards set forth in the federal National School Lunch Act ("NSLA"), 42 U.S.C. §§ 1751 et seq., which sets forth the requirements for the National School Lunch Program ("NSLP"). (Sec. Am. Compl. ¶ 13.)  The NSLA states that any child whose household's income satisfies the income eligibility guidelines "shall be served a free lunch."  42 U.S.C. § 1758(b)(9)(A).  (Sec. Am. Compl. ¶14.)  The NSLA also states that children eligible to receive food stamps or who are homeless are "automatically eligible for a free lunch and breakfast."  42 U.S.C. § 1758(b)(12)(A)(i), (iv).  (Sec. Am. Compl. ¶ 14.)  Defendants also provide free lunch to every child at some schools, regardless of whether each child qualifies for a free meal under the NSLA. (Sec. Am. Compl. ¶ 15.)  Defendants have a policy guaranteeing free breakfast for every student on the basis that "[g]ood nutrition is essential to every young person's health and development," and that "no child is discriminated against because of . . . handicap in the Department of Education's meals programs."  (Id. ¶¶ 16, 17.)  In approximately 300 schools for which the DOE administers a meal program, satellite lunches are delivered from neighboring schools.  (Id. ¶ 18.)

The minors received free breakfast and lunch while in public school.  (Id. ¶¶ 23, 69.) S.D. was 13 and in sixth grade, and S.C. was 16 and in ninth grade as of mid-2007.  (Id. ¶¶ 7, 9.) As required by the IDEA, in 2004 defendants created an Individualized Education Plan ("IEP") classifying S.D. as learning disabled and making specific recommendations for her education. (Id. ¶¶ 26, 27.)  Defendants issued a similar IEP for S.C. in 2005.  Defendants admitted they could not offer either student an appropriate placement in the public schools.  (Id. ¶¶ 28, 70-72.)

Defendants therefore offered each minor what is referred to as a "Nickerson letter," which permitted the minors to enroll in non-public schools at defendants' expense.  (Id. ¶¶ 28, 70-72.)

S.D. therefore has been attending private school, first the Sterling School and then the Hallen School, paid for by defendants by order of an Impartial Hearing Officer ("IHO").  (Id. ¶¶ 36, 49, 56.)  S.C. similarly has been attending the private Karafin school, paid for by defendants by order of an IHO.  (Id. ¶¶ 70-72.)  Those schools do not participate in meal programs and do not offer free lunch or breakfast.  (Id. ¶¶ 32, 57, 73.)  Karafin does not have a cafeteria.  (Id. ¶ 73.)

In January 2005, after C.D. learned that Sterling did not participate in the meal programs, C.D.'s attorney amended S.D.'s impartial hearing request to include a request for payment for breakfast and lunch.  (Id. ¶ 32; Amended Impartial Hearing Request dated Jan. 7, 2005, Ex. A to Sec. Am. Compl.)  An impartial hearing was then held, and C.D.'s counsel repeatedly asserted that payment for meals was required by the IDEA and section 504 of the Rehabilitation Act. (Sec. Am. Compl. ¶ 34.)  Defendants' representative did not oppose the request for free meals, and in fact introduced no testimony or other evidence.  (Id. ¶ 35.)  The resulting order of the IHO required defendants to provide S.D. with tuition at Sterling, transportation to Sterling, and breakfast and lunch at no cost to C.D.; the IHO explicitly found that defendants did not contest C.D.'s request for meals.  (Id. ¶¶ 36-37.)   Defendants nevertheless appealed the portion of the IHO's order regarding the provision of meals to the State Review Office ("SRO").  (Id. ¶ 38.)

In May 2005, State Review Officer Paul F. Kelly ruled that C.D.'s request for breakfast and lunch did not fall within the scope of the IDEA or its implementing regulations.  (Id. ¶ 40; Order of State Review Officer Paul F. Kelly dated May 16, 2005, Ex. C to Sec. Am. Compl.)  He noted that he did not have jurisdiction to review decisions in section 504 hearings.  (Sec. Am.

Compl. ¶ 41.)  In a subsequent hearing C.D. again sought to have tuition, transportation, and

meals paid for by defendants.  (Id. ¶ 45.)  After an October 2005 impartial hearing, the IHO

issued a decision in which she found that neither the IDEA nor section 504 entitled C.D. to

reimbursements or payments for meals while S.D. attended Sterling.  (Id. ¶¶ 46, 50.)  C.D.

appealed this decision to the SRO.  (Id. ¶ 51.)  The SRO again denied C.D.'s appeal pursuant to

the IDEA, and found that it had no jurisdiction under section 504.  (Id. ¶ 53; Order of State

Review Officer Paul F. Kelly dated Mar. 13, 2006, Ex. F to Sec. Am. Compl.)

       C.D. therefore has personally funded and prepared meals that her child previously

received for free in public school.  (Sec. Am. Compl. ¶ 59.)  C.D. earned less than $6,000 in

2004 and again in 2005, and she now spends 30 percent of her weekly income on S.D.'s

breakfast and lunch.  (Id. ¶ 60.)  C.D. has not been reimbursed by defendants.  (Id. ¶ 63.)

       In August 2005, a hearing was held on the school meal issue for S.C.  (Id. ¶ 80.)  The cost

for breakfast for S.C. is $5 per week.  (Id. ¶ 83.)  The IHO subsequently ordered defendants to

pay for breakfast and lunch as follows: $2 for breakfast plus $4 for lunch per day for 185 school

days, totaling $1,110.00.  (Id. ¶ 84; Findings of Fact and Decision by Hearing Officer

Marymargaret Keniry, Esq. dated Sept. 19, 2005, Ex. H to Sec. Am. Compl.)  Defendants have

not paid for S.C.'s meals except for briefly under court order.  (Sec. Am. Compl. ¶¶ 75-76.)[1]

       S.C. is one of seven children living with her mother.  (Id. ¶ 64.)  She and her family

receive public assistance and food stamps, and two of her brothers receive SSI benefits.  (Id. ¶

65.)  In January 2002, S.C. and her family were homeless, and placed in a shelter in East Harlem

---

[1] On October 12, 2005, R.F. moved for a temporary restraining order ("TRO") and preliminary injunction requiring defendants to pay for or provide meals for S.C. at Karafin.  (Sec. Am. Compl. ¶ 75.)  Judge Casey of this Court granted the TRO, and defendants began to pay for S.C.'s meals in October 2005.  (Id. ¶¶ 75-76.)  On December 12, 2005, defendants submitted a declaration from the Director of the Karafin School, Dr. Bart Donow, who declared that if the Court denied R.F.'s request for a preliminary injunction, the Karafin School would provide S.C. with lunch.  (Id. ¶ 77.)  Judge Casey therefore lifted the TRO and denied the preliminary injunction on the ground that there was no harm.  (Id. ¶ 78.)  Defendants immediately stopped paying for S.C.'s meals.  (Id. ¶ 79.)

in Manhattan.  (Id. ¶ 67.)  The family usually turns to food pantries for assistance at the end of

the month.  (Id. ¶ 81.)  S.C. often allows her younger siblings to eat instead of her because of the

limited food in the house.  (Id. ¶ 82.)

Plaintiffs' complaint asserts five claims.  First, it alleges violation of section 504 of the

Rehabilitation Act because plaintiffs have been deprived of their right to free meals solely by

reason of their disabilities.  Second, it alleges violation of the Americans with Disabilities Act

because plaintiffs have been deprived of their rights to free meals by reason of their disabilities.

Third, it alleges a violation of the Individuals with Disabilities Education Act because by

excluding plaintiffs from the meal programs, defendants denied them the free appropriate public

education ("FAPE") to which they are entitled by that Act.  Fourth and fifth, it alleges that

plaintiffs have been denied an equal opportunity to participate in meal programs based on their

disability and have been deprived of their rights under the IDEA and section 504, in further

violation of 42 U.S.C. § 1983.

III.    DISCUSSION

A.    Standard of Review

Dismissal will be granted under Rule 12(c) only if the plaintiff has not pled "enough facts

to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 570 (2007).  Pursuant to this "flexible 'plausibility standard,'" Iqbal v. Hasty, 490 F.3d 143,

157 (2d Cir. 2007), a plaintiff's "[f]actual allegations must be enough to raise a right to relief

above the speculative level," Bell Atlantic, 550 U.S. at 555.  When reviewing a Rule 12(c)

motion to dismiss, the Court assumes the truth of all facts asserted in the complaint and draws all

reasonable inferences from those facts in favor of the plaintiff.  See Cleveland, 448 F.3d at 521.

The parties seek review of administrative proceedings, and therefore the district court

must engage in an independent review of the administrative record.  <u>Cerra v. Pawling Cent. Sch.</u>

<u>Dist.</u>, 427 F.3d 186, 191 (2d Cir. 2005).  Although the Court must give substantial deference to

the factual findings of state administrative bodies, it reviews their legal conclusions based on

statutory interpretation de novo.  <u>Id</u>.

       B.     <u>Plaintiffs' IDEA Claim</u>

Defendants contend that plaintiffs have failed to state a claim pursuant to the IDEA

because the provision of free meals is not an "educational or related service" as covered by the

IDEA, and plaintiffs have not demonstrated a "unique need" for such meals, as required by the

IDEA.  Defendants' interpretation of the applicable statutes and regulations is correct; based on

the language and purpose of the IDEA, meals cannot be considered an "educational or related

service" and the plaintiffs do not have a "unique need" to free meals.  Thus, plaintiffs have not

stated a claim for violation of the IDEA.

The IDEA requires that "all children with disabilities have available to them a free

appropriate public education that emphasizes special education and related services designed to

meet their unique needs and prepare them for further education, employment, and independent

living."  20 U.S.C. § 1400(d)(1)(A); <u>see also</u> <u>id</u>. § 1412(a)(1)(A).  A "free appropriate public

education," also known as a "FAPE," is defined by the Act as "special education and related

services that (A) have been provided at public expense, under public supervision and direction,

and without charge; (B) meet the standards of the State educational agency; (C) include an

appropriate preschool, elementary, or secondary school education in the State involved; and (D)

are provided in conformity with the individualized education program required under section

1414(d) of this title."  <u>id</u>. § 1401(9).  "Related services" are defined as:

        transportation, and such developmental, corrective, and other supportive services
        (including speech-language pathology and audiology services, interpreting services,

> psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, school nurse services designed to enable a child with a disability to receive a free appropriate public education as described in the individualized education program of the child, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children.

id. § 1401(26).[2] "Special education" is defined as "specially designed instruction, at no cost to parents, to meet the unique needs of a child with a disability, including (A) instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings; and (B) instruction in physical education." id. § 1401(29).

Defendants contend that free meals are not a "related service" under the IDEA because they are unrelated to any special education need, and meals do not fall under any of the requirements of the IDEA or its implementing regulations. Thus, they are not a necessary element of a FAPE. Plaintiffs respond that the dilemma facing the students—whether to give up an appropriate education in exchange for being able to eat breakfast and lunch for free—is prohibited by the IDEA and its implementing regulations. See 34 C.F.R. § 300.107(a) ("Each public agency must take steps . . . to provide nonacademic and extracurricular services and activities in the manner necessary to afford children with disabilities an equal opportunity for

---

[2] The relevant federal regulation promulgated to implement the IDEA defines "related services" in essentially identical language as follows:

> Related services means transportation and such developmental, corrective, and other supportive services as are required to assist a child with a disability to benefit from special education, and includes speech-language pathology and audiology services, interpreting services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, early identification and assessment of disabilities in children, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services for diagnostic or evaluation purposes. Related services also include school health services and school nurse services, social work services in schools, and parent counseling and training.

34 C.F.R. § 300.34(a). The other sections of the regulation list the exceptions to related services, such as "a medical device that is surgically implanted," 34 C.F.R. § 300.34(b)(1), and define in detail the related services listed in part (a), 34 C.F.R. § 300.34(c).

participation in those services and activities.")  Because free meals are necessary to provide

plaintiffs with access to a FAPE, plaintiffs continue, the Chancellor can be ordered to provide

those meals pursuant to the IDEA.  Plaintiffs assert that neither the related services listed in 34

C.F.R. § 300.34 nor the services delineated in the IDEA and in 34 C.F.R. § 300.107(b) constitute

an exclusive list of the services that satisfy the requirements for a FAPE.  Moreover, they note

that 34 C.F.R. § 300.117 specifically discusses meals.[3]

Plaintiffs read too much, however, into the statute and the regulations.  34 C.F.R. §

300.107(a) requires disabled students to be provided with nonacademic services and activities in

a manner equal to nondisabled students, and 34 C.F.R. § 300.107(b) lists the kinds of services

that Congress intended be provided.[4]  Although the list of activities and services in the latter

section is explicitly non-exhaustive, it must be read in tandem with the prior section, which

relates to the "mainstreaming" of disabled children with non-disabled children in activities

provided at a school attended by both.  See Rettig v. Kent City Sch. Dist., 720 F.2d 463, 466 (6th

Cir. 1983) (explaining that the nonacademic services regulation, currently numbered as 34

C.F.R. § 300.107, "apparently adopts a standard designed to ensure that handicapped children are

---

[3] 34 C.F.R. § 300.117 provides:

Non-Academic Settings

In providing or arranging for the provision of nonacademic and extracurricular services and activities, including meals, recess periods, and the services and activities set forth in § 300.107, each public agency must ensure that each child with a disability participates with nondisabled children in the extracurricular services and activities to the maximum extent appropriate to the needs of that child.  The public agency must ensure that each child with a disability has the supplementary aids and services determined by the child's IEP Team to be appropriate and necessary for the child to participate in nonacademic settings.

[4] 34 C.F.R. § 300.107(b) reads as follows:

Nonacademic and extracurricular services and activities may include counseling services, athletics, transportation, health services, recreational activities, special interest groups or clubs sponsored by the public agency, referrals to agencies that provide assistance to individuals with disabilities, and employment of students, including both employment by the public agency and assistance in making outside employment available.

exposed to extracurricular activities on an equal basis with non-handicapped children"). The Court concludes that this regulation is inapplicable to meal programs because of both its plain language and its purpose.

Defendants do not provide meals to any students at the minors' private schools, and they are not required to provide them to the minors as a way to "mainstream" them. The other regulation cited by plaintiffs, which does mention meals, is also inapplicable, as it too relates to non-exclusion and mainstreaming of disabled children in activities at schools attended by both disabled and non-disabled children. See 34 C.F.R. § 300.117; Roncker ex rel. Roncker v. Walter, 700 F.2d 1058, 1063 (6th Cir. 1983) (calling the precursor to 34 C.F.R. § 300.117 (34 C.F.R. § 300.553) a "mainstreaming requirement" and stating that "[t]he Act does not require mainstreaming in every case but its requirement that mainstreaming be provided to the maximum extent appropriate indicates a very strong congressional preference"). These regulations enacting the IDEA are inapplicable in a school with no meal program for any student—indeed, S.C.'s school does not even have a cafeteria—or in a school where there is no need for mainstreaming, as there are no non-disabled students.

The IDEA requires that the school district provide the services necessary to address each student's "unique needs." 34 C.F.R. § 300.39(a)(1); Frank G. v. Bd. of Hyde Park, 459 F.3d 356, 365 (2d Cir. 2006) ("[Parents] need only demonstrate that the placement provides 'educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction.'" (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 188-89 (1982))); Cave v. E. Meadow Union Free Sch. Dist., 480 F. Supp. 2d 610, 635 (E.D.N.Y. 2007). Plaintiffs contend that that requirement mandates the provision of free meals to the minors. Plaintiffs argue that providing meals to the

minors while they attend a school that meets their unique needs would assist them in accessing their academic programs.  On the other hand, defendants contend that plaintiffs have failed to identify any "unique need" of these minors that would require them to be served free meals. Indeed, plaintiffs do not clarify what "unique need" is at issue here, and the Court does not find that any "unique need" exists within the intendment of the IDEA.

The United States Supreme Court has determined that a school district need not furnish "every special service necessary to maximize each handicapped child's potential . . . ."  Rowley, 458 U.S. at 199; see also Cerra, 427 F.3d at 194-95.  In Rowley, that Court found that Congress had intended to give handicapped children "a basic floor of opportunity that would bring into compliance all school districts with the constitutional right of equal protection with respect to handicapped children." 458 U.S. at 200 (quotation and citation omitted).  This "basic floor," did not require "equal" education but "access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child."  Id. at 201. This requirement could be met by providing a handicapped child with "instruction and services . . . at public expense," and that instruction "must comport with the child's IEP."  Id. at 203.  Pursuant to the IDEA, the IEP furnished by the school district must be one that is "likely to produce progress, not regression," and it must afford the student an opportunity greater than mere "trivial advancement." Walczak, 142 F.3d at 130 (quotations omitted).  Plaintiffs do not contend that not providing free meals results in an IEP that leads to "regression"; nor do they argue that their IEPs without free meals lead to "mere trivial advancement."  The school district is affording the minors a FAPE and is complying with the IDEA.

It is true that courts have broad discretion to fashion relief under the IDEA in order to ensure students with disabilities are afforded a FAPE.  See Sabatini v. Corning-Painted Post Area

Sch. Dist., 78 F. Supp. 2d 138, 146 (W.D.N.Y. 1999); see also 20 U.S.C. § 1415(i)(2)(C)(iii);

Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 (1993).  But without a violation of the

IDEA—and there is no such violation here—the Court may not provide relief.  Defendants'

motion to dismiss the IDEA claims is granted.

       C.     Plaintiffs' Section 504 and ADA Claims

Defendants move to dismiss plaintiffs' claims under section 504 of the Rehabilitation Act

and under the ADA on the grounds that plaintiffs are not "otherwise qualified" for the free meals

they are seeking because they do not meet the "essential requirement[]" of attending a

participating school; defendants cannot make any reasonable accommodation; plaintiffs cannot

establish that they were excluded from the meals program based on their disabilities; and

plaintiffs cannot establish a disparate impact.  Although the NSLP and the School Breakfast

Program ("SBP") may require attendance at participating schools, defendants can make a

reasonable accommodation by reimbursing the minors or by providing the minors with meals.

They have been excluded from the meal programs because of their disabilities, and they have

made out a claim for disparate impact.  The policy of paying for transportation and tuition for

disabled students at a non-public school, while refusing to pay for the meals that they received

for free when in public school, is facially neutral, but has a disproportionate impact on disabled

students.  Disabled students should not have to choose whether to learn or to eat, and the law

does not require them to choose.

       *1.  Standards*

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits a recipient of federal

funds from discriminating against an individual with a disability solely by reason of that

disability.[5]  The intent of the ADA is to eliminate discrimination against people with disabilities in the provision of public services.  42 U.S.C. § 12101.  The Second Circuit treats both Rehabilitation Act and ADA claims in tandem.  Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003).  To show a violation of either, a plaintiff must show that he or she (1) has a disability; (2) is "otherwise qualified" for the benefit that has been denied, and (3) has been denied the benefit by reason of the disability.  See Weixel v. Bd. of Educ., 287 F.3d 138, 146-47 (2d Cir. 2002); see also Henrietta, 331 F.3d at 272.  A plaintiff is "otherwise qualified" if she meets all of a program's other essential requirements.  See Sch. Bd. of Nassau County v. Arline, 480 U.S. 273, 288 n.17 (1987); 7 C.F.R. § 15b.3(n)(4); 34 C.F.R. § 104.3(*l*)(4).  If a plaintiff does not meet the essential requirements of a program, however, the court can determine whether the plaintiff would meet those requirements if a reasonable accommodation were made.  Arline, 480 U.S. at 288 n.17; see also Castellano v. City of New York, 946 F. Supp. 249, 254 (S.D.N.Y. 1996); 45 C.F.R. § 84.12.

A reasonable accommodation is one that does not "impose an undue hardship on the operation of [a] program or activity."  45 C.F.R. § 84.12(a); see also 28 C.F.R. § 41.53.  In satisfying her burden to make out a prima facie case, "[i]t is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits, and that once the plaintiff has done this, she has made out a prima facie showing that a reasonable accommodation is available, and the risk of nonpersuasion falls on the defendant."  Henrietta D., 331 F.3d at 280 (quotation and citation omitted).  The defendant can discharge that burden by showing that such an accommodation "'would fundamentally alter the nature of the

_____

[5] 29 U.S.C. § 794 states in relevant part:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

service, program, or activity.'" Id., 331 F.3d at 281 (quoting 28 C.F.R. § 35.130(b)(7)).

Factors to be considered in determining whether a reasonable accommodation is available include more than

> simply an assessment of the cost of the accommodation in relation to the [federal funding] recipient's overall budget, but a case-by-case analysis weighing factors that include: (1) [t]he overall size of the recipient's program or activity with respect to number of employees, number and type of facilities, and size of budget; (2) [t]he type of the recipient's operation, including the composition and structure of the recipient's workforce; and (3) [t]he nature and cost of the accommodation needed.

Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 606 n.16 (1999) (plurality opinion) (quotations and citations omitted).  If no reasonable accommodation can be made, the plaintiff is not a "qualified individual," and there can therefore be no violation of section 504 of the Rehabilitation Act or of the ADA.  28 C.F.R. § 35.130(b)(7); see also Arline, 480 U.S. at 288 n.17.

If plaintiffs here show that they are otherwise qualified or that a reasonable accommodation can be made, they must then show that they were denied participation in the free food programs by reason of their disabilities.  See Weixel, 287 F.3d at 146-47.  To find discrimination, a court must find that the discrimination was "by reason of plaintiffs' disabilities"; in other words, that there was causation.  Henrietta D., 331 F.3d at 272.  However, "[t]he Second Circuit has held that, because the ADA is remedial legislation and because 'remedial legislation should be construed broadly to effectuate its purposes,' the causation standard under the ADA requires only that the disability be a 'substantial cause of the exclusion or denial' at issue.  Meekins v. City of New York, 524 F. Supp. 2d 402, 407 (S.D.N.Y. 2007) (quoting Henrietta D., 331 F.3d at 279, 291).

Plaintiffs do not need to show intentional discrimination to succeed under their ADA claims; they also can assert a disparate impact claim or a reasonable accommodation claim.  See

Reg'l Econ. Cmty. Action Program v. City of Middletown, 294 F.3d 35, 48 (2d Cir. 2002).  A

prima facie case of disparate impact claim requires "the plaintiff [to] show: (1) the occurrence of

certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on

persons of a particular type produced by the defendant's facially neutral acts or practices."  Id. at

52-53.  Once the plaintiff makes a prima facie showing, the burden shifts to the defendant to

"prove that its actions furthered, in theory and in practice, a legitimate, bona fide governmental

interest and that no alternative would serve that interest with less discriminatory effect."

Huntington Branch, NAACP v. Huntington, 844 F.2d 926, 936 (2d Cir. 1988).

### 2.   Otherwise Qualified/Reasonable Accommodation

First, the minors here suffer from disabilities:  learning disabilities fall under the rubric of

disabilities as defined by section 504 and the ADA.  See Middletown, 294 F.3d at 46; 28 C.F.R.

§ 41.31(b)(2); 45 C.F.R. § 84.3(j)(2)(ii).  Additionally, defendants have classified each as

"learning disabled."  (Sec. Am. Compl. ¶¶ 7, 9.)  Defendants do not contest this point.

Defendants do contest that the minors are "otherwise qualified" for the benefit that has

been denied—free meals—and that they have been denied those meals by reason of their

disabilities.  They argue that the minors cannot be "otherwise qualified" for free meals because

they do not meet the "essential eligibility requirements" to receive those meals—namely, they do

not attend participating schools.  Defendants argue that the NSLP and SBP are not entitlements

to individual students, but, instead, money is allocated to the states and reimbursed to

participating schools for meals served to qualified students.  See 42 U.S.C. § 1757(a) (funds paid

to a state pursuant to the NSLP "shall be disbursed by the State educational agency . . . to those

schools in the State which the State educational agency . . . determines are eligible to participate

in the school lunch program").  According to defendants, because the minors' current schools do

not participate in the NSLP or SBP, they are not "otherwise qualified" for meal benefits.  See Richmond Welfare Rights Org. v. Snodgrass, 525 F.2d 197, 201 (9th Cir. 1975) (determining that if an individual school did not participate in the NSLP, the district did not owe any duty to the children in that non-participating school to provide them with free meals).

Defendants also contend that no reasonable accommodation could be made that would enable the minors to meet all the essential requirements of the federal meals program. Defendants assert that the Sterling and Karafin Schools cannot meet the specific requirements of the federal meals programs, such as ensuring the nutritional components of the meals served; that failure to meet those requirements would lead to a denial of federal funding; that for-profit schools are excluded from participating in the federal meals program; and that defendants would not qualify for reimbursement from the federal government if they gave these minors money to buy food at their schools or directly provided them with food.  Additionally, providing them with cash or food would run contrary to the purpose of the NSLA, which is "to safeguard the health and well-being of the Nation's children and to encourage the domestic consumption of nutritious agricultural commodities and other food, by assisting the States, through grants-in-aid and other means, in providing an adequate supply of foods and other facilities for the establishment, maintenance, operation, and expansion of nonprofit school lunch programs."  42 U.S.C. § 1751; see also Haddon Township Bd. of Educ., 476 F. Supp. at 697 (the NSLP was designed to facilitate students "eat[ing] a common well-chosen meal together, and learn[ing] at the same time what they should eat" (citation omitted)).

It is unclear on the face of the NSLP whether it is intended to apply only to students in participating schools.  Plaintiffs are correct that no provision of the NSLA specifically imposes a requirement that a student must attend a participating school to be eligible.  Defendants point to a

number of NSLP provisions, however, that discuss participating schools.  See 42 U.S.C. §§ 1756

(referring to reimbursement payments to participating schools); 1758 (nutritional and food safety

requirements for lunches served by participating schools); 1760 (record-keeping requirements for

participating schools; 1753 (payment for "lunches . . . served . . . in schools in such State which

participate in the school lunch program"); see also Torres v. Butz, 397 F. Supp. 1015, 1025

(N.D. Ill. 1975) ("The stated purpose of the Breakfast Program is to insure that each eligible

child in a participating school receives a free breakfast, so as to enable him to better concentrate

on his education.").

    Further, defendants note that participation in the NSLP and SBP is voluntary, and schools

can withdraw from the program at any time.  See, e.g., Charette v. Bergland, 457 F. Supp. 1197,

1199 (D.R.I. 1979); Shaw v. Governing Bd. of Doesto City Sch. Dist., 310 F. Supp. 1282, 1286

(E.D. Cal. 1970).  The Southern District of New York interpreted the NSLA, its enacting

regulations, and legislative history to find, however, that when a district decides to participate in

the NSLP, all schools within that district must participate.  Justice v. Bd. of Educ., 351 F. Supp.

1252, 1261 (S.D.N.Y. 1972); see also Davis v. Robinson, 346 F. Supp. 847, 856 n.5 (D.R.I.

1972) (determining that school districts that decide to participate in the NSLP for some schools

"must provide . . . lunches to all schools within the district which contain children whose

families meet the income poverty guidelines, whether or not those schools have previously

participated in the program").  These cases appear, however, to apply only to schools within the

"jurisdiction" of the school district.  Justice, 351 F. Supp. at 1260-61 (citing 7 C.F.R. § 245.3(a)

(1972)).  Private schools such as those attended by the minors here are not within the defendants'

jurisdiction.  The minors here are therefore not "otherwise qualified" under the NSLP or SBP.[6]

---

[6] This determination is not based on a finding that the Sterling or Karafin Schools are for-profit.  There is no evidence as to that in the record.

Even if the plaintiffs here are not "otherwise qualified" for free meals because they do not meet an "essential eligibility requirement" of the NSLP or SBP, they must be provided with those meals because defendants may be able to make reasonable accommodations.  This is a motion for judgment on the pleadings, and further factual development may help delineate the scope of possible reasonable accommodations.  It appears on the submissions in the record, however, that defendants have a number of options for accommodating the minors' disabilities.  The cost of meals for each of the minors is alleged to be approximately $1,000 for the year, which defendants could pay to plaintiffs or to plaintiffs' schools in the same fashion that they might pay tuition or transportation costs.  (See Sec. Am. Compl. ¶ 84.)  Alternatively, defendants could provide meals to plaintiffs in the same way in which they provide meals to students attending participating schools without proper cafeterias—they can deliver meals.  (Id. ¶ 18.)

Defendants make a number of arguments as to why they cannot reasonably make that accommodation:  they contend that meals provided pursuant to the NSLP must meet specific nutritional requirements or federal funding will be denied, that meals provided pursuant to the NSLP must be supervised in specific ways or the legislative intent will be thwarted, and that the "mandatory implementation" of a meal program, such as that sought by plaintiffs, "would work a dramatic alteration in the whole concept of the federal feeding programs and significantly involve the federal government in an area of local school administration . . . ."  Charette, 457 F. Supp. at 1201.  In the end, those arguments boil down to one overarching complaint:  if defendants are forced to reimburse plaintiffs for meals or provide meals, they may not be reimbursed by the federal government.

All that plaintiffs must do at the motion to dismiss stage is plead the existence of a "plausible accommodation, the costs of which, facially, do not clearly exceed its benefits."

Meekins v. City of New York, 524 F. Supp. 2d 402, 409 n.65 (S.D.N.Y. 2007) (quoting

Henrietta D., 331 F.3d at 280) (quotations omitted).  Plaintiffs here have met that burden, and the

risk of nonpersuasion therefore falls on defendants.  Id.  Defendants' cost-based responses are

unavailing at this point in the litigation.  See id. at 409.  A reasonable accommodation need not

be free.  See Olmstead, 527 U.S. at 603-04; Borkowski, 63 F.3d at 138 (a reasonable

accommodation would be unreasonable if its costs were "excessive"); cf. Palmer v. Thompson,

403 U.S. 217, 226 (1971) ("Citizens may not be compelled to forgo their constitutional rights

because officials fear public hostility or desire to save money.").

Defendants' inability to provide plaintiffs with a free and appropriate public education in

the public school system already requires them to pay tuition and transportation at private

schools.  They cannot now rely on their failure to provide a suitable public school placement—

i.e., placements in "participating schools"—to avoid paying for meals for which the plaintiffs

qualify.

### 3.  *Benefits Denied by Reason of Disabilities*

Plaintiffs also have pled enough facts to establish that they were denied the benefits of

the NSLP and SBP because of their disability.  See Weixel, 287 F.3d at 146-47.  Plaintiffs were

receiving meal benefits when they were in public school.  (Sec. Am. Compl. ¶¶ 23, 69.)  Every

public school in the district is a participating school.  (See id. ¶ 1.)  Solely by reason of their

disability, the students here had no choice but to attend a non-public school.  In fact, only

disabled students are given Nickerson letters allowing them to attend non-public schools at

defendants' expense when they cannot receive a FAPE in public schools.  (Id. ¶ 20.)  Attendance

at non-participating schools in this case was based solely on plaintiffs' disabilities.  This criteria

was therefore impermissibly used to deny plaintiffs a benefit.

Defendants argue that, first, plaintiffs did not properly state a claim of disparate impact in their complaint, and second, that plaintiffs allege no specific group compared to whom they have been disparately impacted.  They also argue that even if plaintiffs established a prima facie case of disparate impact, defendants' failure to provide plaintiffs with meals furthers a bona fide governmental interest: compliance with the mandates of the NSLP and SBP.  Defendants contend that the NSLP and SBP prohibit paying for meals under the auspices of these programs at non-participating schools without a waiver, which is barred in this case.  See 42 U.S.C. § 1760(l)(4)(F) (prohibiting waiver under the NLSA for "equitable participation of children in private schools").

Plaintiffs adequately pled a claim of disparate impact.  They allege that defendants have a facially neutral policy—"that they will not provide free school meals to students who attend non-public schools pursuant to an IEP, Nickerson letter or impartial hearing"—with a disproportionate impact on disabled students—"[o]nly students with disabilities are placed at non-public schools pursuant to IEPs, Nickerson letters, or impartial hearings."  (Sec. Am. Compl. ¶¶ 62 & n.1.)  Plaintiffs need not allege a specific group compared to whom they have been disparately impacted to make out a claim under the ADA and section 504.  Olmstead, 527 U.S. at 598 (no comparison class was required to show that plaintiffs had suffered discrimination on the basis of their disabilities; "[w]e are satisfied that Congress had a more comprehensive view of the concept of discrimination advanced in the ADA"); see also Henrietta D., 331 F.3d at 274-76 (finding that a reasonable accommodation claim under the ADA and section 504 does not require a showing of disparate impact, and that the issue was "whether the plaintiffs with disabilities could achieve meaningful access, and not whether the access the plaintiffs had (absent a remedy) was less meaningful than what was enjoyed by others").  Lastly, defendants'

arguments again return to the cost of paying for plaintiffs' meals.  Defendants argue that the federal government may not reimburse them for these meals, as they may be barred by the NSLP and SBP from providing them to students in non-participating private schools under the auspices of those programs.  As previously discussed, the Court is unable to evaluate on the basis of this record what defendants' costs would be and whether those costs would place an undue hardship on defendants.

Although not precedential, the Department of Education's Office of Civil Rights considered a similar situation in a case about a school district's before- and after-school programs.  Prince George's County (MD) Pub. Sch., 31 IDELR 92, 31 LRP 5837 (O.C.R. Eastern Division, Feb. 25, 1999).  A disabled student wished to participate in the programs, but she was told she could not because she did not attend her "neighborhood school."  Id. at *3.  She was not attending her "neighborhood school" because the district was unable to provide her a proper education there, and she had been placed outside the district at the district's expense.  Id. The district complained that transportation costs and scheduling conflicts were legitimate concerns, but the Office of Civil Rights ("OCR") found that the district had violated section 504 and the ADA.  Id. at *3-*4.  In analyzing the disparate impact of the policy on disabled students, the OCR concluded:

> Although the eligibility criterion mandating enrollment in the neighborhood school appears to be neutral, its effect is to deny certain students with disabilities an equal opportunity to participate in the care programs solely on the basis of their disabilities. The eligibility criterion serves to screen out certain students with disabilities, who because of their disabilities are placed by the District in educational programs outside of their neighborhood schools, and prevents them from enjoying the benefits of a school program.

Id. at *3.  Defendants' policy here similarly excludes the minors from a program based on an eligibility criterion that impermissibly screens out students with disabilities.

Plaintiffs have successfully stated a claim of disparate impact and a claim for reasonable accommodation.  Defendants' policy, as with that in <u>Prince George's County</u>, is outwardly neutral—only students who attend participating schools can receive free meals.  But this policy disproportionately affects disabled students, who are the only students who must choose between a FAPE at a non-participating school and free meals at a participating school that cannot meet their needs.  Plaintiffs have, as previously discussed, set forth a claim for reasonable accommodation.

D.      <u>Plaintiffs' Section 1983 Claims</u>

To set forth a claim pursuant to 42 U.S.C. § 1983, plaintiffs must plead that defendants have violated a federal statutory or constitutional right.  <u>Chan v. City of New York</u>, 1 F.3d 96, 103 (2d Cir. 1993).   Furthermore, a municipality or municipal entity can be held liable only if the municipality itself caused the violation at issue; liability can not be predicated on a theory of respondeat superior or vicarious liability.  <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694-95 (1978).

A municipality therefore can be liable if it "implement[ed] or execut[ed] a policy" or "government 'custom'" and that policy or custom is the direct cause of the violation.  <u>Id.</u> at 690-91; <u>see also</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989).  The policy or custom need not be an "explicitly stated rule or regulation; instead an inference that such a policy existed may be drawn from circumstantial evidence."  <u>R.B. v. Bd. of Educ.</u>, 99 F. Supp. 2d 411, 418 (S.D.N.Y. 2000) (citations omitted).  Furthermore, "Plaintiff need not establish an official policy or custom of the District if the trier of fact finds there has been a decision by a municipal policymaker who possesses final authority to establish municipal policy with respect to the action ordered." <u>Jamieson v. Poughkeepsie City Sch. Dist.</u>, 195 F. Supp. 2d 457, 474 (S.D.N.Y. 2002) (citing

Pembaur v. City of Cincinnati, 475 U.S. 469, 481-82 (1986)).

Here, plaintiffs have alleged that defendants are the policymakers for the DOE, and that their actions represent a policy decision. (Sec. Am. Compl. ¶¶ 10-12, 19.) Plaintiffs also have alleged that it is defendants' custom and policy to deny free meals to poor students who attend non-participating schools because defendants cannot provide those students, who are disabled, with appropriate educations in participating schools by reason of their disabilities. (Sec. Am. Compl. ¶¶ 19, 62 & n.1.) And, as previously discussed, plaintiffs have stated a claim for violation of section 504 of the Rehabilitation Act and the ADA. Plaintiffs therefore can proceed on their section 1983 claim based on violations of section 504 and the ADA. Plaintiffs have not, however, adequately pled a claim under the IDEA, and therefore their section 1983 action as to that claim is dismissed.

## IV. CONCLUSION

Defendants' motion for judgment on the pleadings is denied in part and granted in part. Defendants' motion is denied—and the action may therefore continue—insofar as plaintiffs assert claims based on a section 504 of the Rehabilitation Act and the Americans with Disabilities Act. Defendants' motion is granted to the extent that plaintiffs' claims pursuant to the Individuals with Disabilities Education Act are dismissed.

Dated: New York, New York
      February 11, 2009

SO ORDERED:

Sidney H. Stein, U.S.D.J.

23